No. 43,794

S. C. Sutherland of Neodesha, John Able of Leavenworth, Harold Coe, R. L. Fredrich of Manhattan, A. E. Smith of Hoxie, E. O. Morris of Chanute, H. D. Cellers of Topeka, in Their Own Proper Persons, *Appellants,* v. William M. Ferguson, Attorney General of the State of Kansas, *Appellee.*

(397 P. 2d 335)

Opinion filed December 12, 1964.

*John H. Fields,* of Kansas City, argued the cause, and *William A. Smith* of Topeka, and *David W. Carson, John K. Dear, William Mahoney, Ernest N. Yarnevich, Joseph T. Carey,* and *Hylton Harman,* all of Kansas City, were with him on the brief for the appellants.

*Robert E. Hoffman,* Assistant Attorney General, argued the cause, and *William M. Ferguson,* Attorney General, *pro se,* was with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This is a declaratory judgment action (G. S. 1949, 60-3127 to 60-3132, inclusive) brought by chiropractors suing in their own behalf and in behalf of others similarly situated, attacking certain provisions of Chapter 344, Laws of 1957, appearing at G. S. 1961 Supp., 65-2112 to 65-2125, known as the Basic Science Act, and certain provisions of Chapter 343, Laws of 1957, appearing at G. S. 1961 Supp., 65-2801 to 65-2890, known as the Healing Arts Act.

It is alleged that certain provisions of the acts in question are unconstitutional and amount to an invasion of plaintiff's personal rights and deprive them of equal protection under the law. The action seeks to enjoin defendant attorney general from enforcing the alleged unconstitutional provisions in question.

The case has been here before in *State Association of Chiropractors v. Anderson,* 186 Kan. 130, 348 P. 2d 1042 (1960), in which it

was held that a demurrer to the amended petition was erroneously sustained.

Following that decision issues were joined and the case was submitted to the trial court on the pleadings and stipulations of fact, two of which were:

"That there are material differences between the concepts of medicine and osteopathy on the one hand and chiropractic on the other as to the diagnosis, cause, treatment and cure of bodily ills and diseases in humans.

"That there are points in the basic sciences for which examination is required of all applicants for Healing Arts licenses under Chapter 344, Laws 1957, where such sciences as taught in the University of Kansas, or Universities or colleges of equivalent standing differ materially from such sciences as taught in various schools of chiropractic. That such difference in the teaching of such sciences is wide and substantial."

The trial court upheld the validity of both acts in question and plaintiffs have appealed, alleging five specifications of error.

In their brief plaintiffs state that their case is not an attempt on the part of chiropractors to expand their practice beyond the limits which existed prior to the enactment in 1957 of the two acts in question; that it is not an action to avoid all regulation or supervision of the profession by the state, but that the controversy has its roots in the radical differences in the basic concepts of the treatment and cure of human ills between medical doctors and modern-day osteopaths on the one hand, and chiropractors on the other. It is contended that both of the acts are unreasonable and arbitrary; that they do not contain adequate standards whereby the exercise of discretion may be measured; that they amount to an unlawful delegation of power, and that they deprive plaintiffs of equal protection under the law. It is conceded by plaintiffs that the action actually amounts to an effort by them to keep the chiropractic profession from being "regulated" out of existence.

Before discussing the specific grounds relied on by plaintiffs, we mention a few principles applicable to actions of this nature which are so basic as to require no citation of authority.

Where acts of the legislature are under attack on constitutional grounds, courts must resolve all presumptions and doubts in favor of their validity and are not concerned with their policy or wisdom. With respect to an individual practitioner's right to practice any branch of the healing arts, the right is a mere privilege and is subject to such reasonable and lawful regulations pertaining to qualifications and the licensing of those persons who wish to hold them-

selves out to the public as practitioners, as the legislature, in the exercise of its inherent police power for the protection of the health and welfare of the people, sees fit to enact.

Unless otherwise noted, all references are to G. S. 1961 Supp.

It first is contended that the two acts in question are so unreasonable and arbitrary as to chiropractors as to be unconstitutional. In this connection plaintiffs concede that public health and welfare require regulatory medical control acts, but contend the regulations must be reasonable, and not prohibitive under the guise of regulation, and must have reference in fact to the welfare of society. Specific reference is made to the composition of the State Board of Healing Arts (65-2813) which provides that it shall consist of five doctors of medicine, three doctors of osteopathy, and three chiropractors, all of whom shall have been actually engaged in the practice of their respective professions for a period of at least six consecutive years immediately preceding their appointment by the governor, which appointments are made by and with the consent of the senate (65-2812). 65-2836 (d) provides that a license may be revoked or suspended when the licensee is guilty of the use of untruthful or improbable statements, or flamboyant, exaggerated or extravagant claims in advertisements concerning such licensee's professional excellence or ability, and it is argued that such provision is unreasonable and arbitrary in that it places the "fate" of chiropractors in the hands of a board, eight of whose eleven members subscribe to concepts concerning the diagnosis, cause, treatment and cure of bodily ills and diseases which are materially different from those concepts held by chiropractors.

To uphold this contention would require this court to deny to all present and future members of the State Board of Healing Arts—except chiropractic members—the presumption of reasonableness and good faith to which they are and would be entitled. Absent an affirmative showing to the contrary, we refuse to indulge in any such presumption, and plaintiffs' contention as to this point is held to be without merit.

The second and third specifications of error are that the trial court erred in concluding that the acts do not unlawfully delegate legislative powers, and in concluding that the acts contain adequate standards.

Plaintiffs concede that in this day and age, with governmental functions becoming more and more complex, more and more powers

are of necessity being delegated to administrative officials, and that the advisability of vesting more power in boards and agencies is solely a question for legislative decision. It also is conceded that many of the powers delegated to the two boards in question are proper. It is contended, however, that an arbitrary discretion is vested in an administrative official if the statute fails to prescribe a uniform rule of action, or if it fails to lay down a guide or standard whereby the exercise of discretion may be measured, and that there are certain limitations which must be respected.

Among other things, our attention is directed to 65-2825, which gives to the board authority to determine what schools shall be accredited; to 65-2836, which provides that a license may be revoked or suspended for the failure of a licensee to take some form of post-graduate work each year as required by the board; to 65-2119, which requires an applicant for a basic science certificate to submit evidence satisfactory to the board that he is a person of good moral character, and to 65-2876, which provides that for the purpose of the act an accredited school of chiropractic shall be a legally incorporated school teaching chiropractic which the board shall determine to have a standard not below that of the national college of chiropractic of Chicago, and that all such schools shall be approved by the board.

We see nothing wrong with the sections under attack. In the very nature of things, when dealing with the broad field of treatment of human ills and the protection of the health and welfare of the public, the legislature necessarily must delegate much discretion to the two boards in question. As was said in State, ex rel., v. Urban Renewal Agency of Kansas City, 179 Kan. 435, 440, 296 P. 2d 656, the legislature may enact general provisions but leave to those who are to act certain discretion in "filling in the details" so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority. On the same subject see State, ex rel., v. Fadely, 180 Kan. 652, (Syl. 7), 308 P. 2d 537. Furthermore, the standards here established, pertaining to educational background, moral character, regular post-graduate work, approval of chiropractic schools, and the like—certainly may not be said to contain inadequate standards and guideposts, and likewise may not be said to constitute an unlawful delegation of legislative powers.

And finally, it is contended the trial court erred in concluding

that enactments of the legislature creating legislative boards must be upheld, absent a showing that such boards have acted arbitrarily or capriciously against the individuals complaining.

This specification of error apparently has reference to a statement contained in the trial court's memorandum decision. Plaintiffs place too much emphasis on the isolated sentence for it is clear the trial court's judgment was not based solely on the fact that plaintiffs, as individual chiropractors, had failed to show specific arbitrary or capricious action on the part of the boards. The point requires no further discussion.

This case was submitted to the trial court on the pleadings and stipulations of fact, and therefore, the last specification of error— that the plaintiffs' motion for a new trial was erroneously overruled —likewise is without merit and calls for no discussion.

On oral argument of this appeal it was conceded that as of now no chiropractor has been "hurt" by operation of the acts or by action of either of the boards. Admittedly, as plaintiffs frankly state, the case was filed in an attempt to keep the chiropractic profession from "being regulated out of existence." It is contended that certain provisions of the acts make it "possible" for an injustice to result to a chiropractor and plaintiffs are afraid of what "might" happen under the operation of the acts. This contention, of course, over-looks and ignores the presumption that, until the contrary is shown, public officials, such as here the members of the board, will act fairly, reasonably and impartially in the performance of their duties. If such officials fail to so act, and thus abuse the discretion reposed in them, courts are not powerless to step in and to determine whether the procedure employed in reaching a decision, or whether the decision itself as rendered, is unreasonable, arbitrary or oppressive under the facts and circumstances of a particular case. (*Marks v. Frantz,* 183 Kan. 47, 52 [Syl. 3], 325 P. 2d 368). In other words, these plaintiffs, and others similarly situated, are in no sense fore-closed from having their day in court for the redress of wrongs committed.

The judgment is affirmed.